# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br>vs.<br>FERNANDO JAVIER ALARID,<br><br>  Defendants. | CASE NO. 11cr1447-LAB-1 and 15cv207-LAB<br><br>**ORDER DENYING MOTION PURSUANT TO 28 U.S.C. § 2255** |

    Defendant Fernando Alarid was convicted by a jury of conspiracy to import, conspiracy to distribute, and possession with intent to distribute, over 1,000 kilograms of marijuana. Evidence presented at trial showed that Alarid was the head of a drug-importing operation that brought marijuana from Mexico into the United States via a tunnel. The exit point of the tunnel was located in a warehouse in the Otay Mesa area of San Diego county. From the warehouse, the drugs were transported by tractor-trailer to various other destinations in the country. Over 30,000 kilograms of marijuana was discovered in the warehouse, at the tunnel's entry point, or in transit from the warehouse. Authorities had been monitoring the warehouse for nearly a year before arrests were made.

    Through counsel, Alarid took an appeal, which was unsuccessful. He then filed three lengthy motions (Docket nos. 109, 111, and 113) pursuant to 28 U.S.C. § 2255, seeking to vacate his conviction. The three motions are virtually identical, except that the first two include exhibits. If the Court were to treat the third as a separate petition, it would be barred

as both untimely and successive. But because the three motions are quite similar, the Court construes the third as an amended version of the first two, although it also considers the first two as being incorporated by reference into the third. In any event, Alarid's claims in all three sets of briefs are virtually the same, and none of them merit relief.

In connection with his appeal, Alarid ordered transcripts of the motions in limine hearing and the entire trial, and they are filed in the docket. Alarid also attached some medical documents to his first two petitions, in support of his competency argument.

**Legal Standards**

If the motion, files, and records of the case conclusively show that the petitioner is entitled to no relief, the Court may deny the motion without requiring the government to respond or holding a hearing. *See* § 2255(b). A § 2255 motion may not be used to litigate claims that were litigated on direct appeal. *See United States v. Jingles*, 702 F.3d 494, 498–99 (9th Cir. 2012). Claims that could have been, but were not, raised on direct appeal are procedurally defaulted, and a petitioner seeking to raise them in a § 2255 motion must show cause and prejudice or actual innocence. *Bousley v. United States*, 523 U.S. 614, 622 (1998). But ineffective assistance of trial counsel claims, which most of Alarid's claims are, need not be raised on direct appeal to preserve them for collateral attack. *See United States v. Withers*, 638 F.3d 1055, 1066 (9th Cir. 2011) (citing *Massaro v. United States*, 538 U.S. 500, 504 (2003)).

Most of Alarid's claims are based on alleged ineffective assistance of trial counsel, and as such are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). The Supreme Court, noting the "wide latitude" that criminal defense counsel are afforded, and the fact that "[t]here are countless ways to provide effective assistance in any given case," has held that "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. The Court has also instructed lower courts to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* The burden falls on the defendant, Alarid, to overcome the presumption that the actions he challenges might be considered sound trial strategy. *Id.*

Moreover, even clearly-demonstrated errors by counsel do not entitle a defendant to relief. Such errors must be shown to be prejudicial. *Id.* at 693. That is, Alarid must show there is a "reasonable probability" that, but for his trial counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. A "reasonable probability" is less than a preponderance of the evidence, but more than the possibility of some conceivable effect; it must undermine confidence in the outcome. *Id.* at 693–94.

**Alarid's Claims**

Alarid charges his trial counsel with:

1. Failure to challenge "omission of elements" and the government's burden of proof;
2. Failure to address a confrontation clause violation;
3. Failure to challenge "Racial References of Ethnic Groups" made by a witness; and
4. Failure to "explore into Alarid's competency" and to request a competency hearing.

Much of the argument is merely discussion of the legal issues and standards, and does not actually raise a claim. And some of Alarid's claims implicate other issues that could have been — or were — raised on direct appeal. For example, he appears to argue that the evidence was insufficient to support his conviction.  Those claims are defaulted and Alarid has not attempted to show cause and prejudice, or actual innocence. This order addresses the remainder.

**Failure to Challenge "Omission of Elements" the Government Had to Prove**

Alarid recites the elements of the crimes he was charged with (Docket no. 113 at 2–4) before asserting that the government failed to "authenticate" the type of drug he was accused of smuggling and possessing. He cites Fed. R. Evid. 901 as requiring such "authentication." (*Id.* at 4–5.) He argues that the government should have undertaken "scientific testing" of the suspected marijuana, to prove that it was actually marijuana and

/ / /

not some counterfeit. (*Id.* at 4–6.) And he argues that the "authentication" used did not meet the standard under *Daubert v. Merrell Dow Pharmaceutical*, 509 U.S. 579 (1993).

First, there was no need for the government to introduce evidence that most of the drugs seized were actually marijuana, because Alarid's counsel stipulated to that fact. (*See* Docket no. 73 (Tr. of First Day of Trial), 150:8–151:13; Docket no. 74 (Tr. of Second Day of Trial), 200:21–201:15.) Second, elements of a crime may be proved by any competent evidence, and scientific testing in a laboratory is not the only acceptable way of proving the type of drug. Here, there was testimony that officers conducted a field test and determined the drugs to be marijuana. (Docket no. 74, 262:15–21 (testimony that marijuana packages found in the warehouse were field-tested and found to contain marijuana).) In addition the officers who seized the marijuana were familiar with that drug, and could identify it. (*See* Docket no. 73, 149:6–7, 20–24 (officer's testimony that he found marijuana).) And finally, the circumstances surrounding this large-scale, long-term smuggling operation render ludicrous the suggestion that the 30,000 kilograms seized were something other than marijuana. Clearly the smugglers understood it was marijuana, as did their customers. Finally, Alarid never argues — nor could he reasonably do so —that, had the drugs been tested, they would have been found to be something other than marijuana.

Alarid's best defense — the one his counsel in fact relied on — was that he was ignorant of and unconnected to the smuggling operation. (Docket no. 73 at 104:15–24 (Defense Counsel's Opening Statement).) His counsel was making an eminently reasonable choice by stipulating to what could not reasonably be contested and focusing instead on his best defense.

**Confrontation Clause**

This claim is partially derivative of the previous one. Alarid argues that his counsel should have insisted on "authentication" of the type of drug, and then insisted on confronting the person who "authenticated" it.

This is a non-starter, for two reasons. First, because the stipulation obviated the need to prove the type of drug, evidence of laboratory testing was not introduced at trial. Failure

to call someone whose testimonial statements weren't introduced at trial is not a Confrontation Clause violation. Second, as noted above, the people who identified the substance as marijuana (through field testing or examination and observation) did take the stand and were subject to cross-examination.

**Failure to Address Racial References**

This claim concerns testimony by an expert witness, Special Agent Flood, regarding the practices of drug-smuggling operations and the relative street values of marijuana in the U.S. and Mexico. Part of Flood's testimony concerned the practices of "tunnel" organizations, that is, groups specializing in building tunnels under the U.S-Mexico border to bring in drugs undetected. The part of Flood's testimony that Alarid finds offensive is Flood's mention that such organizations are based in Mexico. (Docket no. 113 at 14 (summarizing and quoting testimony).)  Alarid believes that the mention of Mexico, coupled with the fact that he is Mexican, amounts to a constitutional violation, because it invited the jury to convict Alarid simply on the basis of his ethnicity.

Had Alarid's counsel objected to this testimony at trial, it would have been overruled. Testimony about Mexican drug organizations was relevant and would easily have passed the Fed. R. Evid. 403 balancing test, and its admission was certainly not unconstitutional. The smuggling operation in this case brought large amounts of drugs from Mexico into the U.S. through a tunnel under the border. So it was completely appropriate that evidence would be offered about the practices of groups engaged in this kind of activity. Flood's testimony could not reasonably have been construed as suggesting that Alarid was guilty simply because he was Mexican. Had his counsel made such a suggestion, it certainly would not have helped his case, and likely would have hurt it.

**Failure to Explore Alarid's Competency and to Request a Competency Hearing**

Alarid argues his counsel was ineffective, because of his failure to properly explore the issue of Alarid's competency and to request a hearing.  This argument fails, because Alarid's counsel <u>did</u> raise and actively litigate the issue of his competency both to stand trial and to be sentenced.  (*See* Docket nos. 67 ("Motion to Determine Competency of

Defendant"), and 82 (objection to medical report and request for continuance).) The Court appointed a psychologist, ordered an examination, received the report, held a hearing, received evidence, and found him competent. (Docket nos. 69, 79, 83, 84.) The psychologist was provided with relevant records, including Alarid's medical records. (*See* Docket no. 83, Ex. 1 (email to psychologist, attaching records and other documents).)

To the extent Alarid is arguing his counsel did not competently litigate the competency issue by relying on the medical evidence he points to and making the arguments he thinks his counsel should have made, he is in error. Alarid's own arguments are unreasonable and unsupported by evidence. The medical records he has attached to his first and second motions (hand-annotated, presumably by him ) show  that he had a tumor at the front of his skull that had been causing headaches, and that he underwent an operation to remove it.[1] But they do not express any concern that the tumor was causing any kind of cognitive impairment, nor do they support any of Alarid's speculations. Alarid's counsel was not ineffective for failing to make the arguments Alarid now thinks he should have.  The outcome of his counsel's efforts may not have been what Alarid hoped for, but it was not due to any unprofessional error on his counsel's part.

To the extent Alarid is challenging the Court's resolution of Alarid's motion and its competency determination, that issue could have been raised on direct appeal, and has therefore been waived. And in any event, his argument fails on the merits. Competency to stand trial is based on a defendant's capacity to understand the nature and consequences of the proceedings and to assist in his defense. *United States v. Loughner*, 672 F.3d 731, 678–79 (9th Cir. 2012) (providing formulations of the meaning of competency).  The fact that a defendant has, or has had, a brain tumor does not by itself mean he is incompetent. And the Court certainly did not, as Alarid claims, recognize that Alarid was mentally ill. (*See* Docket no. 113 at 14 (arguing that the Court noticed Alarid was behaving irrationally and determined he was mentally ill).) He was perfectly lucid at his allocution, and gave the Court

---

[1] Alarid's medical records also point out other health problems, including testicular cancer and hypertension, though Alarid does not claim those affected his competence in any way.

no reason to suspect he was impaired or incompetent. Rather, all the Court did was take into account at sentencing that Alarid had had health problems (*see id.* at 15–16), a fact that the Ninth Circuit noted as well. (*See* Docket no. 107 (Mandate) at 5 (noting that the Court had properly taken into account at sentencing Alarid's health problems).)

**Conclusion and Order**

Because the motions, files, and records in this case conclusively show Alarid is not entitled to relief, the Court can rule on his motions without a hearing. His request for relief under § 2255 is **DENIED**. Because he has not made a substantial showing of the denial of a constitutional right, a certificate of appealability is also **DENIED**. *See* 28 U.S.C. § 2253(c)(2).

**IT IS SO ORDERED**.

DATED: July 27, 2015

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge